2002 OK 97

The STATE of Oklahoma, ex rel., Moshe TAL, resident taxpayer of the City of Oklahoma City, Oklahoma & Taxpayers Against Ripoffs ("T.A.R."), an association of more than ten resident taxpayers of the City of Oklahoma City, Plaintiffs/Appellees,

and

MaryGaye LeBoeuf, Appellee,

v.

The CITY OF OKLAHOMA CITY ("City"), Oklahoma, a municipal corporation; Ronald J. Norick, in his personal and official capacity as former Mayor of the City; Kirk D. Humphreys, in his personal and official capacity as the Mayor of the City; James E. Thompson, in his personal and official capacity as Assistant City Manager & former MAPS Director; William O. West, in his personal and official capacity as City's Municipal Counselor; Daniel T. Brummitt, in his personal and official capacity as City's Assistant Municipal Counselor; The Oklahoma Urban Renewal Authority ("Urban Renewal"), a public body corporate; Tiana P. Douglas, in her personal and official capacity as the Executive Director of Urban Renewal; Stanton L. Young, Fred Jones Hall, J. Larry Nichols, Warren Gardner, and James R. Tolbert III, in their personal and official capacities as Commissioners of the Urban Renewal; William ("Bill") O. Johnstone, in his personal and official capacity as the former Commissioner of Urban Renewal; Dan Batchelor, in his personal and official capacity as legal counselor of Urban Renewal, Defendants,

and

Bricktown Parking Investors, L.L.C., an Oklahoma Limited Liability Company; Bricktown–TMK/Hogan Parking, L.L.C., an Oklahoma Limited Liability Company; OKC Athletic Club Limited Partnership, an Oklahoma Limited Partnership, Defendants/Appellants,

and

BAP–Bricktown, L.L.C., an Oklahoma Limited Liability Company, Defendant,

and

TMK/Hogan, a Joint Venture; Bricktown TMK/Hogan Entertainment, L.L.C., an Oklahoma Limited Liability Company; Hogan Property Management, L.L.C., an Oklahoma Limited Liability Company, Defendants/Appellants,

and

Torchmark Corporation ("TMK"), an Alabama corporation; Torchmark Development Corporation ("TDC") and TMK Income Properties, L.P. ("TIP") both subsidiaries of TMK, Defendants,

and

Dan Randolph ("Randy") Hogan, Defendant/Appellant,

and

Edwards Theatres Circuit, Inc., a California corporation; Oklahoma Gas & Electric Company ("OG & E"), an Oklahoma corporation; The Benham Group, an Oklahoma corporation; and John Doe No. 1–50, Defendants.

The State of Oklahoma, ex rel., Moshe Tal, resident taxpayer of the City of Oklahoma City, Oklahoma & Taxpayers Against Ripoffs ("T.A.R."), an association of more than ten resident taxpayers of the City of Oklahoma City, Plaintiffs/Appellants,

v.

The City of Oklahoma City ("City"), Oklahoma, a municipal corporation; Ronald J. Norick, in his personal and official capacity as former Mayor of the City; Kirk D. Humphreys, in his personal and official capacity as the Mayor of the City; James E. Thompson, in his personal and official capacity as Assistant City Manager & former MAPS Director; William O. West, in his personal and official capacity as City's Municipal Counselor; Daniel T. Brummitt, in his personal and official capacity as City's Assistant Municipal Counselor; The Oklahoma Urban Renewal Authority ("Urban Renewal"), a public body corporate; Tiana P. Douglas, in her personal and official capacity as the Executive Director of Urban Renewal; Stanton L. Young, Fred Jones Hall, J. Larry Nichols, Warren Gardner, and James R. Tolbert III, in their personal and official capacities as Commissioners of the Urban Renewal; William ("Bill") O. Johnstone, in his personal and official capacity as the former Commissioner of Urban Renewal; Dan Batchelor, in his personal and official capacity as legal counselor of Urban Renewal; Bricktown Parking Investors, L.L.C., an Oklahoma Limited Liability Company; Bricktown–TMK/Hogan Parking, L.L.C., an Oklahoma Limited Liability Company; OKC Athletic Club Limited Partnership, an Oklahoma Limited Partnership, Defendants/Appellees,

and

BAP–Bricktown, L.L.C., an Oklahoma Limited Liability Company, Defendant,

and

TMK/Hogan, a Joint Venture; Bricktown TMK/Hogan Entertainment, L.L.C., an Oklahoma Limited Liability Company; Hogan Property Management, L.L.C., an Oklahoma Limited Liability Company, Defendants/Appellees,

and

Torchmark Corporation ("TMK"), an Alabama corporation; Torchmark Development Corporation ("TDC") and TMK Income Properties, L.P. ("TIP") both subsidiaries of TMK, Defendants,

and

Dan Randolph ("Randy") Hogan, Defendant/Appellee,

and

Edwards Theatres Circuit, Inc., a California corporation; Oklahoma Gas & Electric Company ("OG & E"), an Oklahoma corporation; The Benham Group, an Oklahoma corporation; and John Doe No. 1–50, Defendants.

Nos. 95,271, 95,741.

Supreme Court of Oklahoma.

Dec. 17, 2002.

As Corrected Dec. 26, 2002.

MaryGaye LeBoeuf, Oklahoma City, OK, for Moshe Tal, Taxpayers Against Ripoffs and herself in Case No. 95,271.

James F. Davis of Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, OK, for the City of Oklahoma City, Ronald J.

Norick, Kirk D. Humphreys, James E. Thompson, William O. West and Daniel T. Brummitt.

James Dan Batchelor and Janis S. Powers of Batchelor & Powers, Oklahoma City, OK, and John C. McMurry, Oklahoma City, OK, for the Oklahoma City Urban Renewal Authority, Stanley L. Young, Fred Jones Hall, J., Larry Nichols, Warren Gardner, James R. Tolbert III, William O. Johnstone, Tiana P. Douglas and James Dan Batchelor.

Melvin R. McVay, Jr., Robert N. Sheets, Heather L. Hintz and Ellen K. Spiropoulos of Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, Oklahoma for Bricktown Parking Investors, L.L.C., Bricktown–TMK/Hogan Parking, L.L.C., OKC Athletic Club Limited Partnership, TMK/Hogan, a Joint Venture, Bricktown TMK/Hogan Entertainment, L.L.C., Hogan Property Management, L.L.C. and Dan Randolph Hogan.

1. We *sua sponte* consolidate the two appeals for opinion. Consolidation promotes a coherent body of law because the appeals emanate from the same trial court case, and one appeal involves denial of sanctions against represented parties and their attorney under 12 O.S.2001, § 2011 and the other a grant of sanctions in the form of attorney fees against the same represented parties under a trial court's inherent authority to sanction bad faith litigation misconduct.

2. Attorneys appeared for plaintiffs and filed briefs on their behalf in Appeal Case No. 95,741 other than MaryGaye LeBoeuf, who represents plaintiffs and herself in Appeal Case No. 95,271.

3. A question concerning whether all the private-sector defendants that had their motion for § 2011 sanctions denied by the trial judge's August 22, 2000 judgment appealed via Case No. 95,271 requires some discussion. Although **eight** private-sector defendants filed the § 2011 motion, only **seven** appealed the denial in Case No. 95,271. The Petition in Error filed in that appeal on September 21, 2000 states under the heading "I[,] **TRIAL COURT HISTORY** ... NAME OF PARTY OR PARTIES FILING THIS PETITION IN ERROR" that it is filed on behalf of the following **seven** defendants: Bricktown Parking Investors, L.L.C., an Oklahoma Limited Liability Company; Bricktown–TMK/Hogan Parking, L.L.C., an Oklahoma Limited Liability Company; OKC Athletic Club Limited Partnership, an Oklahoma Limited Partnership; TMK/Hogan, a Joint

LAVENDER, J.:

¶ 1 These two appeals come from the same trial court case and require resolution of two questions.[1] (1) Did the trial judge err in denying a motion for sanctions filed pursuant to 12 O.S.Supp.1994, § 2011 (now 12 O.S. 2001, § 2011) by seven private-sector defendants (the Hogan group) against plaintiffs (Moshe Tal and Taxpayers Against Ripoffs—T.A.R.—a group of taxpayers who brought the underlying *qui tam* suit against said defendants and others) and plaintiffs' attorney, MaryGaye LeBoeuf?[2] (2) Did he err in granting three motions for attorney fees, anchored on his inherent authority to sanction bad faith litigation misconduct, filed solely against plaintiffs by twenty-two (22) defendants—City of Oklahoma City and related defendants (City); Oklahoma City Urban Renewal Authority and related defendants (OCURA); and the Hogan group? We hold the trial court did not err in denying the § 2011 motion, but did in granting attorney fees under his inherent authority.[3]

Venture; Bricktown TMK/Hogan Entertainment, L.L.C., an Oklahoma Limited Liability Company; Hogan Property Management, L.L.C., an Oklahoma Limited Liability Company; and Dan Randolph ("Randy") Hogan (the Hogan group). The defendant **not** listed is BAP–Bricktown, L.L.C., an Oklahoma Limited Liability Company. Though the Hogan group briefs in Case No. 95,271 (March 19 and May 21, 2001) name **eight** private-sector defendants as appellants, the extra one named in the briefs is Torchmark Corporation ("TMK"), an Alabama corporation, **not** BAP–Bricktown. Torchmark is not mentioned in the August 22nd judgment appealed in Case No. 95,271 nor in the December 12, 2000 judgment appealed by plaintiffs in Case No. 95,741 and neither judgment denied nor granted sanctions/attorney fees to Torchmark. Although another law firm filed an Entry of Appearance on BAP–Bricktown's behalf in Case No. 95,271, no separate Petition in Error or brief(s) were filed in the appeal on its behalf. BAP–Bricktown is not an appellee in Case No. 95,741 as it is not mentioned in the December 12th judgment plaintiffs challenge in that appeal. For these reasons and others disclosed by the record submitted in the appeals (unnecessary to detail) we do **not** consider BAP–Bricktown as invoking our appellate jurisdiction in Case No. 95,271 and it is **not** a party to either appeal. *See Bane v. Anderson, Bryant & Co.*, 1989 OK 140, 786 P.2d 1230, 1233–1234. In that Torchmark is not mentioned in either judgment it is **not** a party to either appeal, though for some reason it is listed on the initial/cover pages, the introductory paragraph

## PART I.   STANDARD OF REVIEW.

¶ 2 The appellate review standard of a sanction ruling is abuse of discretion. *Hammonds v. Osteopathic Hospital Founders Association*, 1996 OK 100, 934 P.2d 319, 322 (propriety of sanctions under § 2011); *Broadwater v. Courtney*, 1991 OK 39, 809 P.2d 1310 (propriety of sanctions under § 2011 and 23 O.S.2001, § 103); *see also Meadows v. Wal–Mart Stores, Inc.*, 2001 OK 25, 21 P.3d 48 (review of decision to not impose sanctions in regard to discovery matter and under § 103) and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)(review standard of sanction ruling under Fed.R.Civ.Pro. 11, 28 U.S.C.A. [Rule 11], is abuse of discretion). In that § 2011 is adopted from its federal counterpart Rule 11, we may look to federal case law to aid in its interpretation and application. *Warner v. Hillcrest Medical Center*, 1995 OK CIV APP 123, 914 P.2d 1060, 1064, *cert. denied* 519 U.S. 861, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996).

¶ 3 To reverse for abuse of discretion we must determine the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence. *Abel v. Tisdale*, 1980 OK 161, 619 P.2d 608, 612. Also, proceedings to impose sanctions are considered equitable in nature. *Warner v. Hillcrest Medical Center, supra*, 914 P.2d at 1072. Though an appellate court examines and weighs any proof in the record, it abides the presumption the lower court decision on the sanction question is legally correct and cannot be disturbed unless contrary to the weight of the evidence or to a governing principle of law. *Id.* If legally correct the trial judge's decision may not be reversed because of faulty reasoning, an erroneous finding of fact, or the consideration of an immaterial issue. *Id.*

## PART   II.   FACTUAL   BACKGROUND AND PROCEDURAL HISTORY.

¶ 4 Title 62 O.S.1991, §§ 372–373 (now 62 O.S.2001, §§ 372–373) are *qui tam* statutes. *State ex rel. Trimble v. City of Moore*, 1991 OK 97, 818 P.2d 889, 892. Section 373 pro-vides that after written demand to a governmental entity (like City) by a sufficient number of taxpayers claiming a transaction using public funds is unauthorized, unlawful, fraudulent or void, if the public entity refuses, fails or neglects to either institute or diligently prosecute proper legal or equitable proceedings to recover any money or property belonging to the public entity, the taxpayers may bring an action in the name of the State of Oklahoma for the recovery, including a statutory (§ 372) treble damage penalty. Under § 373 the taxpayer is allowed to keep one-half (½) of the money and one-half (½) the value of property recovered, as a reward.

¶ 5 In January 1999 T.A.R. submitted a written demand to City under §§ 372–373 (*City of Oklahoma City v. Oklahoma City Urban Renewal Authority* [*Tal I* ], 1999 OK 71, ¶ 2, 988 P.2d 901, 903) alleging certain transactions connected with the Oklahoma City Metropolitan Area Projects (MAPS) were unlawful. MAPS began with the passage of a one-cent sales tax increase by Oklahoma City voters. The extra revenue was earmarked to construct certain new projects (e.g. Bricktown Ballpark and Canal) and renovate existing structures (e.g. the Myriad Convention Center). *Tal I*, 1999 OK 71, at ¶ 9, 988 P.2d at 904–905.

¶ 6 In response to the demand City filed a declaratory judgment suit against OCURA and two of the private-sector defendants. The suit covered three agreements dealt with in the written demand—a Parking Agreement, a Ground Lease and a Redevelopment Agreement (the Agreements). In the suit City asked the lower court to declare the Agreements lawful and, alternatively, if determined unlawful that an order issue that OCURA return certain property to City and that all amounts owed City be returned as well. City did not raise any issue(s) concerning part of the written demand—Claim III thereof—that *challenged the lawfulness of* City's decision to construct a new power plant to serve the renovated Myriad Convention Center and a new sports/events Arena built near it. Nor did City raise issues cov-

(page one) and signature page of the March 19th brief in chief and the initial/cover pages and

signature page of the May 21st reply brief of the Hogan group filed in Case No. 95,271.

ered in the demand concerning alleged self-dealing and conflicts of interest of certain public officials, allegations claimed to support the unlawfulness of the Agreements and the power plant transaction(s).

¶ 7 Represented by other counsel than Ms. LeBoeuf, T.A.R. sought to intervene in the declaratory action, claiming, in effect, City was not diligently prosecuting the suit because City's position was the Agreements were lawful (the position taken by all named parties). Intervention was denied and, thereafter, trial was had without T.A.R.'s participation, although the depositions of, at least, some of T.A.R.'s members were taken about a week before trial and were considered by the trial court before ruling on the motion to intervene. *Tal I*, 1999 OK 71, at ¶ 5, 988 P.2d at 904. After trial a judgment ruling the Agreements lawful issued and a mandatory injunction was entered requiring OCURA to carry out the terms of the Agreements between itself and the private-sector defendants. *Tal I*, 1999 OK 71, at ¶ 7, 988 P.2d at 904. The judgment held the public property covered by the Agreement(s) had been sold for adequate consideration and that the Agreements provided adequate accountability and safeguards to OCURA and City. *Tal I*, 1999 OK 71, at ¶¶ 11–12, 988 P.2d at 905.

¶ 8 T.A.R. appealed the denial of intervention and *Tal I* affirmed because City was representing the rights of all its taxpayers, City was entitled to the presumption it would do so in good faith and taxpayers failed to overcome the presumption City would act in good faith in presenting the matter of the Agreements' lawfulness to the trial court. *Tal I*, 1999 OK 71, at ¶ 31, 988 P.2d at 908. *Tal I* also opined that the fact all parties to the declaratory suit agreed the Agreements were lawful did not deprive the action of its justiciable character, nor were the issues presented in it feigned or collusive. 1999 OK 71, at ¶ 29, 988 P.2d at 907. We also note neither in the trial court (in its written submissions—motion to intervene and motion for continuance and brief of authorities in support of motion to intervene) nor in its appellate brief submitted in *Tal I* to support reversal of the denial of intervention did T.A.R.

assert City's failure to raise any issue concerning the power plant allegations of the written demand or, except in a cryptic manner, City's failure to assert in the declaratory suit the claims of self-dealing and conflict of interest of certain public officials.

¶ 9 Also, in *Tal I* it was expressly stated that only the narrow issue of whether the trial court erred in denying taxpayers' motion to intervene (and a related motion for a continuance) was before this Court. *Tal I*, 1999 OK 71, at ¶ 14, 988 P.2d at 905. *Tal I* also, in effect, ruled that because taxpayers were properly denied intervention they were excluded as party litigants and had no standing to tender for our review in that appeal any errors that may have been made in the judgment upholding the Agreements as lawful. *Tal I*, 1999 OK 71, at ¶ 23, 988 P.2d at 906. Thus, although *Tal I* discussed the Agreements, it did not affirm the trial court judgment declaring their lawfulness [*Tal I*, 1999 OK 71, at ¶ 0 and ¶ 31, 988 P.2d at 902 and 908] because no **party** actually appealed the trial court's merit judgment. Only T.A.R. sought to appeal from it, but because intervention was denied we ruled they lacked standing to tender any errors made in regard thereto.

¶ 10 Another previous case involving T.A.R. has also been before this Court, *State ex rel. Tal v. Norick* (*Tal II*), 1999 OK 85, 991 P.2d 999. Prior to the January 1999 written demand, T.A.R. had submitted an earlier written demand (September 1998) to City concerning transactions other than those involved in *Tal I*, to wit: the Bricktown Ballpark contract(s). *Tal II*, 1999 OK 85, at ¶ 4, 991 P.2d at 1000. T.A.R. filed a *qui tam* action in relation to the Ballpark contract(s) against City and the Oklahoma City Public Property Authority (OCPPA). *Id.* However, City and OCPPA responded to the September 1998 demand with a declaratory suit asking the lower court to declare the Ballpark transaction(s) valid or, alternatively, if determined unlawful, sought return of the property. *Tal II*, 1999 OK 85, at ¶ 5, 991 P.2d at 1000. In *Tal II* we affirmed a trial court decision dismissing the Ballpark *qui tam* action on the basis it was brought prematurely because City and OCPPA were

prosecuting the declaratory action and were entitled to the presumption they would do so in good faith. *Tal II,* 1999 OK 85, at ¶¶ 6–9, 991 P.2d at 1000–1001. In ·essence, T.A.R. argued in *Tal II,* as in *Tal I,* that City, and OCPPA in *Tal II,* could not diligently prosecute the Ballpark declaratory suit because they disagreed that the involved contract(s) were unlawful, but believed and asserted the contract(s) were lawful.

¶ 11 In March 2000, after *Tal I and II,* T.A.R. brought the *qui tam* suit underlying the present appeals. The trial court's dismissal of the suit was affirmed in *State ex rel. Tal v. City of Oklahoma (Tal III ),* 2000 OK 70, 19 P.3d 268, *cert. denied* 534 U.S. 814, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001) on the basis *Tal I's* holding that T.A.R. did not have standing to intervene in City's prior declaratory suit because of the failure to show City was not adequately representing their interests or those of the other taxpayers of Oklahoma City in the declaratory suit, precluded the *qui tam* action regarding the same project(s). Although *Tal III* did not specify the preclusion doctrine applied, the parties here seem to agree it was claim (*res judicata* ) and/or issue (collateral estoppel) preclusion.[4]

¶ 12 The Hogan group's § 2011 motion for sanctions (including a request for attorney fees) against plaintiffs and Ms. LeBoeuf was denied by a judgment filed on August 22, 2000.[5] However, separate motions of City, OCURA and the Hogan group for attorney fees against plaintiffs were granted by the trial judge under his inherent authority to sanction bad faith litigation misconduct in a December 12, 2000 judgment. Fees of $53,394.00 to City, $67,404.00 to OCURA and $63,355.00 to the Hogan group were awarded. An· argument made (in the trial court and on appeal) by one or more of the defendants to support sanctions/attorney fees against plaintiffs is that the *qui tam* suit was brought for the improper purpose of delaying the MAPS projects—as Mr. Tal (leader of T.A.R.) was an unsuccessful bidder on Bricktown projects—and for monetary gain under the reward provision of § 373. Also, it was argued (and reiterated on appeal), in effect, no competent attorney could make a reasonable argument, given *Tal I* and *II,* that the *qui tam* action was not precluded.[6]

¶ 13 Ms. LeBoeuf and plaintiffs argue (as in the trial court) that the *qui tam* action was not brought for any improper purpose and that a reasonable argument existed that it was not precluded. They assert that Ms. LeBoeuf, after conducting extensive factual investigation into the *qui tam* written demand claims and significant legal research into whether preclusion doctrine barred the suit, concluded a competent attorney could make a reasonable argument the action was not precluded. She so advised her clients and the action was filed.

¶ 14 Ms. LeBoeuf also prepared on plaintiffs' behalf and filed in the trial court extensive submission(s) setting forth the position as to why the suit was not barred. Part of the argument was and is that *Tal I* can be read to be limited only to the intervention question and it did not absolutely foreclose an argument that City did not actually diligently prosecute the claims made in the written demand through the vehicle of the declaratory suit. ·She argued that because City

---

4. The Hogan group also seems to assert the law of the case doctrine. Even if that doctrine is applicable, in our view, the arguments raised by plaintiffs and Ms. LeBoeuf as to why the underlying *qui tam* action was not wholly barred/precluded, although unsuccessful, did not fall below the objective reasonableness standard of a competent attorney sufficient to support a sanction award against plaintiffs or Ms. LeBoeuf.

5. The City of Oklahoma City and related defendants (City) and the Oklahoma City Urban Renewal Authority and related defendants (OCURA) also moved for sanctions against plaintiffs and Ms. LeBoeuf under § 2011. The motions were denied in the same August 22nd judgment that

denied the Hogan group motion. Neither City nor OCURA appealed the denial.

6. Title 62 O.S.1991, § 373 was amended in 2000 to allow the recovery of attorney fees by public officials (or others alleged in the written demand to have paid out or received any money or property unlawfully or fraudulently) if all claims in the taxpayers' written demand are determined frivolous. 2000 Okla. Sess. Laws, Ch. 351, § 9 (West). The amendment was effective June 6, 2000. This was after the January 1999 written demand and the March 2000 filing of the underlying *qui tam* action by plaintiffs/taxpayers. We express no view on the amendment here.

expressly disagreed with taxpayers' claims of illegality and invalidity, and because certain present and/or former public officials (directly or indirectly involved in prosecution of the declaratory suit) had conflicts of interest with the taxpayers of City—generally based on alleged self-dealing and conflicts regarding the Agreements and power plant transaction(s)—City could not be deemed to have diligently prosecuted the claims of unlawfulness in *Tal I*. In effect, plaintiffs asserted all of the claims made in the demand as to the alleged unlawfulness of the transactions covered were not fully and fairly investigated or presented by City in the declaratory suit and this failure on City's part provided an exception to applying a preclusion bar. It was also argued, in essence, that the manner in which City presented the declaratory suit (acquiesced in and/or assisted by the other parties thereto), including a limited exposition of the claims made in the written demand, coupled with the speed with which the declaratory suit proceeded (it was filed on January 16, 1999 and tried on March 1st of the same year—*Tal I, supra,* 1999 OK 71, at ¶ 4, 988 P.2d at 904), and a failure to timely notify taxpayers of the trial setting, was intended to and did prevent taxpayers from fully presenting to the trial court presiding over the declaratory suit both the merits undergirding the written demand claims of unlawfulness and from making a more detailed showing of the inadequacy of City's prosecution of the suit.[7]

¶ 15 The Hogan group appeals the § 2011 motion denial. Plaintiffs appeal the granting of the attorney fee motions under the trial court's inherent authority. We now affirm denial of the former and reverse the grant of the attorney fee motions.

**PART III. CASE NO. 95,271—APPEAL BY HOGAN GROUP—THE TRIAL JUDGE DID NOT ABUSE HIS DISCRETION IN DENYING THE § 2011 MOTION.**

¶ 16 Oklahoma follows the American Rule as to the recovery of attorney fees. The Rule is generally that each litigant pays for their own legal representation and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery. *Kay v. Venezuelan Sun Oil Co.,* 1991 OK 16, 806 P.2d 648, 650. Exceptions to the Rule are narrowly defined [*id.*] and carved out with great caution [*Beard v. Richards,* 1991 OK 117, 820 P.2d 812, 816] because it is understood liberality of attorney fee awards against the non-prevailing party has a chilling effect on our open access to courts guarantee. *Id.* Section 2011 provides a statutory basis for the award of attorney fees under certain limited circumstances.

¶ 17 Section 2011 provides in pertinent part:

A. SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in his individual name, ... or, if the party is not represented by an attorney, shall be signed by the party....

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have

---

7. As indicated in the text, *City of Oklahoma City v. Oklahoma City Urban Renewal Authority (Tal I)*, 1999 OK 71, ¶ 4, 988 P.2d 901, 904 states City's declaratory suit was filed on January 16, 1999. However, attached to plaintiff's (sic) brief in opposition to defendants' motions to dismiss filed on April 20, 2000 in the underlying *qui tam* suit involved in these appeals is a copy of City's petition in the declaratory suit showing a file-stamp date of January 26, 1999.

evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.

1. HOW INITIATED.

a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. . . .

2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs a and b of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.

a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.

Like its federal counterpart Rule 11, § 2011 requires an attorney make reasonable inquiry to assure all motions, pleadings and papers filed with a court have a factual basis, are legally tenable and are not submitted for an improper purpose. *See Cooter & Gell v. Hartmarx Corp., supra,* 496 U.S. at 393, 110 S.Ct. 2447. Boiled down, § 2011 attempts to discourage presenting to a court (whether by signing, filing, submitting or later advocating) a pleading, written motion or other paper that is legally and/or factually frivolous, or for an improper purpose, such as delay. The central goal is to deter baseless filings. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. at 393, 110 S.Ct. 2447. Sanctions rightly exist to ensure the orderly and proper functioning of the legal system [*Cities Service Co. v. Gulf Oil Corp.,* 1999 OK 16, ¶ 8, 976 P.2d 545, 548] and serve the dual purposes of deterring and punishing offending conduct. *See id.* However, they should not be, and are not intended to be, a device to chill novel legal theories that, although unlikely to succeed, have a reasonable basis in law and fact. *See TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15, 22–23 (involving test as to appeal frivolity under 20 O.S.2001, § 15.1).

¶ 18 The propriety of sanctions under § 2011 in regard to legal or factual frivolity of a claim or defense does not depend on the attorney's subjective good faith and having a pure heart, but empty head provides no defense to a sanction order under the statute. *Warner v. Hillcrest Medical Center, supra,* 914 P.2d at 1064; *First Nat. Bank and Trust Co. of Vinita v. Kissee,* 1993 OK 96, 859 P.2d 502, 512. When faced with deciding if sanctions should be imposed under § 2011, a court must view the matter through the eyes of a competent attorney who is advocating the claim of his/her client(s). An objective test is used to decide if a competent lawyer could make a reasonable argument supporting the legal theory advanced [*Hammonds v. Osteopathic Hospital Founders Association, supra,* 934 P.2d at 322–323], but the test is not whether the argument, claim or defense being presented is ultimately successful. *See id.* and *Broad-*

*water v. Courtney, supra,* 809 P.2d at 1312–1313. To constitute a frivolous legal position it must be clear under existing precedents that there is no chance for success and no reasonable argument to extend, modify or reverse the law as it stands. *Mareno v. Rowe,* 910 F.2d 1043, 1047 (2nd Cir.1990), *cert. denied* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). The same objective test applies when a plaintiff is faced with having to respond to an affirmative defense. *See In re Edmonds,* 924 F.2d 176, 181–182 (10th Cir.1991); *White v. General Motors Corporation, Inc.,* 908 F.2d 675, 682 (10th Cir.1990), *cert. denied* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *see also Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1448 (11th Cir.1998), *cert. denied* 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999)(for imposition of sanctions under Rule 11 for excessive relitigation of issue already decided the disputed issue must have been clearly decided by court's earlier orders and counsel's relitigation must clearly offer no meritorious new arguments).

¶ 19 Although the argument(s) put forward by Ms. LeBoeuf in response to the dismissal motions of the underlying *qui tam* suit were unsuccessful as evidenced by our affirming dismissal on preclusion grounds in *Tal III,* the question is whether her arguments as to why the *qui tam* suit was not precluded were nonetheless objectively reasonable, rather than being baseless, or factually or legally frivolous. We believe as a matter of law the arguments were not objectively unreasonable, nor were they shown to be baseless, or factually or legally frivolous.[8]

¶ 20 The central elements of claim and issue preclusion are well known. *Deloney v. Downey,* 1997 OK 102, ¶ 17, 944 P.2d 312, 318. Claim preclusion bars relitigation by parties or their privies of issues which either were or could have been litigat-

ed in a prior action which resulted in a prior judgment on the merits. *Id.* In other words, where the two causes of action are the same the first judgment is a complete bar to the second action. *McKee v. Producers' & Refiners' Corp.,* 1935 OK 160, 41 P.2d 466, 469. Issue preclusion requires, at a minimum, that the party against whom it is being asserted was either a party to or a privy of a party to the prior action and that the issue subject to preclusion have actually been adjudicated in the prior case in which said issue was necessary or essential to its outcome [*Deloney,* 1997 OK 102, at ¶ 17, 944 P.2d at 318], but the doctrine does not require the successive causes of action to be the same. *McKee,* 41 P.2d at 469. For either to be properly applied the party against whom it is interposed, or someone in privity with such party, must have had a full and fair opportunity to litigate the claim or critical issue. *Richards v. Jefferson County, Alabama,* 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *Nealis v. Baird,* 1999 OK 98, ¶ 51, 996 P.2d 438, 458. In essence, plaintiffs argued—in response to the motions filed by defendants to dismiss the underlying *qui tam* action on preclusion grounds—that City could not be said to be in privity with taxpayers as to the claims of unlawfulness raised in the written demand because City's position was directly at odds with taxpayers' position, City did not adequately represent the interests of Oklahoma City taxpayers generally in the prior declaratory suit, and that they (taxpayers) never had a full and fair opportunity to present the claims raised in the written demand or the adequacy of City's prosecution of the declaratory suit sufficient to invoke a preclusion bar.

¶ 21 Although normally a prior action by a public governmental entity in a qui tam-like situation does support application of the doctrine of preclusion as to all claims that were raised or could have been raised in the

---

8. We note we do not find *State ex rel. Oklahoma Bar Ass'n v. Tweedy,* 2000 OK 37, 52 P.3d 1003, *cert. denied* 531 U.S. 1145, 121 S.Ct. 1082, 148 L.Ed.2d 958 (2001), to be controlling on the sanction issue(s) involved in this case. We also do not believe, as explained in **PART IV,** *infra,* at ¶ 31, that an appropriate conclusion could be reached that the underlying *qui tam* suit was filed for the purported improper purposes of

delay or monetary gain such that sanctions under § 2011 were warranted. We further note it is not our purpose here to revisit *Tal I, Tal II* or *Tal III,* but merely to determine if, in the face of *Tal I* and *Tal II,* the argument Ms. LeBoeuf put forward that the underlying *qui tam* action was not barred by preclusion, claim or issue, was one—under an objective reasonableness standard—a competent attorney could make.

prior suit in a subsequent taxpayer action involving the same transaction(s), in the normal situation the governmental entity litigating the prior suit **agrees** with the taxpayers concerning the unlawfulness of the challenged transaction(s). *See e.g. Jackson v. Sadler*, 1935 OK 490, 44 P.2d 838 (county action to cancel deed and later suit by taxpayer for same relief after prior proceeding brought by county terminated in judgment against county). The reason that a later taxpayer action is precluded is that in the absence of fraud or collusion in the prior suit, the taxpayers are merely bringing the subsequent suit in the stead of the governmental entity and, they, like all residents of the city, county or governmental unit involved, are bound by the former judgment. *Jackson, supra*, 44 P.2d at 842. If this were not so, each citizen, resident or taxpayer would be at liberty to commence a suit to relitigate the same question repeatedly, and it would, thus, be difficult to imagine what efficacy could ever be given to the former judgment. *Id.* at 842–843. Therefore, when a public entity actually diligently prosecutes a suit after a *qui tam* written demand and seeks to recover public money or property, i.e. **the justice of the taxpayer claims are not disputed**, a later claim by taxpayers challenging the same transactions already litigated by the public entity is barred as to issues raised in the prior suit or those that could have been raised. Such a rule serves the salient purpose of bringing an end to litigation and allowing public officials and those with whom they contract concerning public projects or funds to go about the business of serving the public welfare.

¶ 22 This Court has also ruled that the right of a taxpayer to institute and maintain a *qui tam* action does not accrue until the proper officers fail or refuse to institute and prosecute the action, and if such officers do institute and diligently prosecute a proper action, the right of the taxpayer to institute and prosecute the *qui tam* suit never even accrues. *State ex rel. Watson v. Board of Com'rs of Lincoln County*, 1943 OK 56, 137 P.2d 240 *Syllabus by the Court*. However, our cases also seem to make plain that a half-hearted effort on the part of public officials in pursuit of an action following a *qui tam*

written demand does not suffice to cut off the taxpayer right to pursue an action in their own right. *See State ex rel. Sheel v. Ingram*, 1933 OK 373, 23 P.2d 648, *overruled in part on other grounds* in *State Board of County Com'rs of Pontotoc County ex rel. Braly v. Ford*, 1941 OK 270, 116 P.2d 988; *see also Threadgill v. Peterson*, 1923 OK 662, 219 P. 389 and *Wood v. Phillips*, 1923 OK 668, 219 P. 646 (taxpayers of municipal subdivision or county should be allowed to intervene in suit brought against public entity on alleged contractual claim so that suit may be properly defended when the governmental entity fails to mount an appropriate defense and essentially agrees said claim should be paid).

¶ 23 The issue *Tal I* decided was that taxpayers were properly denied intervention in City's declaratory judgment suit because they failed to overcome the presumption City was prosecuting that suit in good faith to test the legality of the challenged Agreements. Although, in essence, *Tal I* stated that the fact all parties to the declaratory suit agreed on the lawfulness of the Agreements did not show the suit was collusive or fictitious, there can be no serious question City's declaratory suit was a friendly one because all parties to it disagreed with the claims made in the written demand and argued the lawfulness of the Agreements presented in that case. Because of the need to resolve speedily an issue of public importance, there can also be little question that *Tal I* relaxed the strict necessity of a true or a high level of adverseness normally required for there to be a justiciable live case or controversy sufficient to invoke a court's authority to hear a dispute. *Tal I, supra*, 1999 OK 71, at ¶¶ 25–30, 988 P.2d at 907–908; *see Application of Goodwin*, 1979 OK 106, 597 P.2d 762. There also seems to be no question that City did not raise in the declaratory suit all the claims made in the written demand to support the unlawfulness of the Agreements or the claims made as to the invalidity of the power plant transaction(s).

¶ 24 In *Richards v. Jefferson County, Alabama, supra*, the United States Supreme Court found it necessary to distinguish between two types of taxpayer actions to decide a preclusion issue involving prior litigation.

517 U.S. at 802–804, 116 S.Ct. 1761. In one type of taxpayer action, the taxpayer is using his status as such to entitle him/her to complain ·about the misuse of public funds or about public action that has only an indirect impact on the taxpayer(s). *Id.* at 803, ·116 S.Ct. 1761. An example is a *qui tam* proceeding. In the other type, the taxpayer challenges public action that attempts to levy or reach the personal funds of the taxpayer. *Id.* As to the former situation, the Supreme Court recognized states have wide latitude to establish procedures limiting the number of judicial proceedings that may be entertained or to determine whether to afford a taxpayer any standing at all. *Id.* As to the latter, however, the Supreme Court held that where taxpayers received neither notice of, nor sufficient representation in, the prior litigation, as a matter of federal due process, the prior adjudication could not bind them or bar them from challenging an allegedly unconstitutional tax.

¶ 25 The situation involved here, of course, is the former type, i.e. a *qui tam* action, and it was correct to apply the preclusion bar in regard to further litigation of this matter because plaintiffs should have raised all of their claimed deficiencies regarding City's prior declaratory judgment suit in that proceeding—notwithstanding their technical non-party status in the prior action—either at the trial level or in their appeal of the denial of intervention in that case. Nevertheless, we conclude the position put forward in the trial court by Ms. LeBoeuf as to why the instant *qui tam* suit was not wholly precluded did not fall below the objective standard of § 2011. In our view, though the argument was not particularly strong (some may even characterize it as fairly weak), we believe a competent lawyer could make a reasonable argument (although ultimately an unavailing one) supporting the legal theory advanced, to wit: that the underlying suit here was not wholly barred by preclusion doctrine and there was still a potentially viable live controversy based on the assertion(s) that City did not adequately/diligently prosecute all of the claims in the written demand and taxpayers did not have a full and fair opportunity in the earlier declaratory suit to present those claims because they

were not parties to it, or a full and fair opportunity to present in that suit all relevant issues concerning the adequacy/diligency of City's prosecution of the suit. Despite the fact that the position was flawed and a preclusion bar was appropriate, it simply cannot be said that at the time the argument was made the existing precedents clearly showed there was no chance· of success. Thus, the trial court decision to deny the § 2011 motion for sanctions of the Hogan group does not evidence an abuse of discretion and the denial must be affirmed.

## PART IV. CASE NO. 95,741—APPEAL BY PLAINTIFFS—THE TRIAL JUDGE ABUSED HIS DISCRETION IN GRANTING ATTORNEY FEES UNDER HIS INHERENT AUTHORITY.

¶ 26 *City National Bank & Trust Co. v. Owens,* 1977 OK 86, 565 P.2d 4, recognized the. inherent equitable authority of a trial court to award attorney fees against a party for bad faith litigation misconduct— conduct that is vexatious, wanton or engaged in for oppressive reasons. The authority springs from a court's power to manage its own affairs to achieve the orderly and timely disposition of cases and is a necessary implicit element in the existence of a judicial system. *See Winters By and Through Winters v. City of Oklahoma City,* 1987 OK 63, 740 P.2d 724, 726. *Owens'* progeny makes plain, however, the inherent authority exception to the American Rule recognized in *Owens* (1) is a narrow one; (2) should be applied with a degree of caution and restraint; and (3) was not intended to grant trial courts some broad, all-encompassing equitable authority to award attorney fees. *Smith v. State ex rel. Dept. of Human Services,* 1990 OK 19, 788 P.2d 959, 961–962; *see also Wallace v. Halliburton Co.,* 1993 OK 24, 850 P.2d 1056, 1060–1061. In plain words, the inherent power was not meant to be a mechanism to sanction or punish parties or their attorneys for raising novel theories or espousing unpopular causes that are neither baseless nor frivolous. For attorney fees to be awarded under a court's inherent authority "overriding considerations" must indicate the need for such a recovery.· *Owens,* 565 P.2d at 8–9. Our review of the record convinces us the

trial court applied his inherent authority broadly rather than narrowly, he did not employ the required amount of caution and restraint, his application of that authority in the circumstances evident here was irreconcilably at odds with the denial of monetary sanctions under § 2011, and no overriding considerations warranted the imposition of sanctions in the form of attorney fees.

■■ ¶ 27 In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), *reh. denied* 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991) the United States Supreme Court recognized that the inherent power of a court to impose sanctions is both broader and narrower than Rule 11, § 2011's federal counterpart. It is broader because its reach is more extensive in that it extends to the full range of litigation abuses [*id.*] and a written document, through filing or advocacy, does not necessarily figure into the equation. It is narrower, however, because a finding of bad faith conduct or willful disobedience of a court's orders is required, as opposed to Rule 11 where an objective standard of reasonable inquiry is imposed that does not require a finding of bad faith. *Id.* Furthermore, when there is offending conduct in the course of litigation that could be adequately sanctioned under § 2011, or similar statutory provision, a court should ordinarily rely on said statute rather than its inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. at 50, 111 S.Ct. 2123. Only if in the informed discretion of the lower court an applicable statute or rule is not up to the task should the court rely on its inherent power. *Id.*

¶ 28 In our view, because it was not objectively unreasonable for Ms. LeBoeuf to make the legal argument—based on her factual investigation, review of applicable law, including this Court's opinions in *Tal I* and *Tal II*—that the underlying *qui tam* suit was not precluded, the plaintiffs (the clients) may not be sanctioned simply for following that legal advice in the form of having the suit filed and having Ms. LeBoeuf respond to the motion(s) to dismiss that were based on preclusion grounds. But our review of the record convinces us that is what occurred.

■■ ¶ 29 Generally, it is inappropriate to sanction the client for following their lawyer's legal advice. *See e.g. Patterson v. Alaska Airlines, Inc.*, 756 F.Supp. 476, 480 (W.D.Wash.1990)(it is attorney's responsibility to determine whether statute of limitation has run, not the client's responsibility, for purposes of determining which of them—attorney, client, or both—is subject to sanctions under Rule 11); *Taylor v. United States*, 151 F.R.D. 389 (D.Kan.1993)(normally, client entitled to rely on attorney's legal advice). This is nothing more than a recognition that sanctions under § 2011 should be imposed upon the individual responsible for the filing of the offending document. *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985).

¶ 30 A review of the record in these appeals leads us to conclude the plaintiffs were not sanctioned for any actual litigation misconduct or culpable conduct of their own, such as providing their attorney with incorrect facts, or some similar conduct that would involve the clients' own bad faith litigation misconduct. Such latter conduct, i.e. providing the attorney with false factual information or failing to provide obviously pertinent information to their counsel would, of course, permit sanctions solely against the client. *See Taylor v. United States, supra.* That is not the situation here, however. The conduct sanctioned, as we see it, was for having the lawsuit filed and for mounting a response to the motions to dismiss. The clients cannot be sanctioned for said conduct when the trial court was of the view it was not appropriate to sanction plaintiffs' counsel (which we agree was an appropriate decision or, at least, not an abuse of the trial judge's discretion) under § 2011.

¶ 31 Given the legal advice relied upon it would also be inappropriate to conclude T.A.R. filed suit merely for the improper purpose of delaying the development of certain Bricktown projects because Mr. Tal was an unsuccessful bidder on some Bricktown projects. It is simply not unusual for an unsuccessful bidder on a public project to bring a qui tam-like proceeding questioning the legality or validity of a contract or transaction that has actually been awarded. *See e.g. Ferch v. District Court of City and*

*County of Denver,* 123 Colo. 262, 227 P.2d 997 (1951). As the Colorado Supreme Court recognized: "[d]isinterested citizens are seldom diligent at investigation of the conduct of public officials and often it is only upon disagreement of the parties directly involved and pursuant to selfish desires that the facts of illegal or improper contracts are brought to light." *Ferch,* 227 P.2d at 999. Yes, the transaction(s) or contract(s) attacked as unlawful were sought to be constrained by the plaintiffs, but that is no different than in the vast majority, if not all, *qui tam* suits. Further, that monetary gain was part of the motivation for the *qui tam* suit is also not a valid indicator of some improper purpose. Section 373 **itself** provides for a reward to the taxpayer that vindicates the public fisc through the means of a *qui tam* lawsuit.

¶ 32 In that it was not objectively unreasonable to have filed the *qui tam* suit and to have mounted a response to defendants' motions to dismiss based on preclusion, and because the record does not support a conclusion there was some overriding need for a monetary attorney fee sanction, the trial judge abused his discretion in using his inherent power against plaintiffs as he did. As a matter of law that authority was applied too broadly, inconsistently with *City National Bank & Trust Co. v. Owens, supra* and progeny, and the trial judge's use of his inherent authority, in the circumstances evident here, was irreconcilably at odds with the § 2011 motion denial. The attorney fee awards to the City, OCURA and the Hogan group must, therefore, be reversed.[9]

**PART V. CONCLUSION.**

¶ 33 The trial judge did not err in denying the Hogan group motion for sanctions made pursuant to § 2011 because it was not objectively unreasonable for Ms. LeBoeuf and plaintiffs to have filed the underlying *qui tam* suit nor to mount a response to defendants' motions to dismiss based on preclusion grounds. As a matter of law, however, the trial court abused his discretion in granting, under his inherent authority to sanction bad faith litigation misconduct, the motions of City, OCURA and the Hogan group for attorney fees.

9. In view of our reversal of the attorney fee judgment appealed by plaintiffs in Appeal Case No. 95,741 we need decide no issue raised by

¶ 34 Accordingly, the trial court judgment appealed in Case No. 95,271 is **AFFIRMED** and the trial court judgment appealed in Case No. 95,741 is **REVERSED.**

¶ 35 HARGRAVE, C.J., HODGES, KAUGER, SUMMERS and BOUDREAU, JJ., concur.

¶ 36 OPALA, J., concurs in parts I through III; concurs in result in part IV.

¶ 37 WATT, V.C.J. and WINCHESTER, J., dissent.

WATT, V.C.J., with whom WINCHESTER, J. joins, dissenting:

### DISSENTING OPINION

¶ 1 I dissent to the majority opinion. I would reverse the trial court for having declined to impose sanctions under 12 O.S. § 2011. I would affirm the trial court's having awarded attorneys' fees under its inherent power to do so where bad faith has been established. My reasons for dissenting here are set out at some length in my dissenting opinion in *Tal III, State ex rel. Tal v. City of Oklahoma City,* 2000 OK 70, 19 P.3d 268.

them in said appeal concerning the reasonableness of the amount of fees awarded.