2004 OK CIV APP 57

**William R. BURKETT,
Plaintiff/Appellant,**

v.

**Moshe TAL, Francis M. Lowrey, David A. Yeagley, Jaquiline B. Harrison, Joseph V. Nelson, W.D. McGowen, Physilla Jo Polley, Morning–Star Takapu, Michael P. Toms, Kasey L. Toms, Thomas Hurley, Lanette McCoy, Carolyn Scatena, Edna Richardson, and Jack Wellborn, Defendants/Appellees.**

No. 100,229.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 4, 2004.

Certiorari Denied June 14, 2004.

William R. Burkett, Oklahoma City, OK, Pro Se Plaintiff/Appellant.

Moshe Tal, Oklahoma City, OK, Pro Se Defendant/Appellee.

James E. Dunn, James E. Dunn & Associates, Oklahoma City, OK, for Remaining Defendants/Appellees.

Opinion by RONALD J. STUBBLEFIELD, Judge.

¶1 This is an appeal by the Municipal Counselor of the City of Oklahoma City from summary judgment granted in favor of defendants in his personal action for libel. The case has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S.2001, ch. 15, app. 1. Based on our review of the record on appeal and applicable law, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 On February 25, 2003, Defendants Moshe Tal, Francis M. Lowrey, David A. Yeagley, Jaquiline B. Harrison, Joseph V. Nelson, W.D. McGowen, Physilla Jo Polley, Morning–Star Takapu, Michael P. Toms, Kasey L. Toms, Thomas Hurley, Lanette McCoy, Carolyn Scatena, Edna Richardson and Jack Wellborn, calling themselves Taxpayers for Honest Government (Taxpayers),[1] filed a sixteen-page "written demand" with the City Clerk of Oklahoma City.[2] The document, in great detail, claimed that the Mayor and members of the city council, along with the Director, Chairman, and members of the Oklahoma City Urban Renewal Authority (OCURA) conspired to and did cause an illegal appropriation of approximately $17,000,000 of taxpayer funds for expenditure for the benefit of the private company, Bass Pro Outdoor World, L.L.C. The written demand stated that, if the public officials took no action, the group would proceed with its own legal action pursuant to 62 O.S.2000 §§ 371–372.

¶3 The written demand claimed expenditures of tax revenues were illegal as they violated Article 10, Sections 14, 17, and 19 of the Oklahoma Constitution, as well as the statutory provisions of 68 O.S.2001 § 2701 and 11 O.S.2001 § 35–202. In addition the document stated claims that the transactions involved (1) "Self–Dealing and Conflict of City and Urban Renewal Officials;" (2) conspiracy and racketeering activities by public officials; and (3) anti-competition and monopoly law violations. Under the conspiracy and racketeering claim, Taxpayers included the following language in paragraph 32:

> Urban Renewal Commissioners Tolbert, Hall, and Nichols, together with Urban Renewal Executive Director Tiana Douglas ("Douglas"), with the aid of Urban Renewal Commissioners Stanton Young ("Young") and Warren Gardner ("Gardner") entered into a conspiracy agreement among themselves and with numerous members of the TMK/Hogan Team, Mayor Humphreys, City Manager James Couch ("Couch") and other City Council members (especially Councilman Guy Liebmann ["Liebmann"]), and joined by the City and Urban Renewal attorneys, including, but not limited to Urban Renewal "Chief" Counselor, Mr. Dan Batchelor ("Batchelor"), Oklahoma City Municipal Counselor William Burkett ("Burkett"), Assistant Municipal Counselor Daniel Brummitt ("Brummitt"), Assistant Municipal Counselor Diane Lewis ("Lewis"), Former Municipal Counselor William West ("West"), and other unnamed coconspirators working under the supervision of attorneys Batchelor and Burkett, and developed a scheme to illegally "convert" millions of dollars from MAPS Sales Tax Funds, as well as money from City's other tax funds (school, safety, etc as outlined above), and from Federal CDBG funds, for their own personal use and financial gain, using the TMK/Hogan Team and Bass Pro as a "front" to cover-up their illegal activities.

Immediately after filing the written demand, Taxpayers attended a regularly scheduled meeting of the City Council of Oklahoma City. One or more members of the group approached counsel members to personally serve copies of the written demand. However, City Counselor (City Attorney) Burkett purportedly stated he had received a copy of

---

1. In other pleadings in related "Tal" cases, the group has called itself Taxpayers Against Ripoffs.

2. The description of events occurring hereafter is largely taken from the statement of facts in Taxpayers' motion for summary judgment. Burkett does not dispute the facts, but does claim that most are irrelevant, and that the case turns on a legal issue—whether the written demand of Taxpayers is privileged under the pertinent statutes. We agree, but recite the facts to put the litigation in perspective.

the written demand and had circulated copies of it to council members. Then, sometime during the meeting, Burkett read paragraph 32 aloud to the council. The council meeting was televised on a local cable television channel.

¶4 The day after the council meeting, Burkett sent a letter to Taxpayers threatening a libel suit if they did not publicly apologize and withdraw the statement made in paragraph 32. Taxpayers responded that they had made the charges after diligent investigation; their filing of the written demand was a statutory prerequisite for filing a taxpayer lawsuit under 62 O.S.2001 § 373; and, as a communication made in a "legislative or judicial proceeding or any other proceeding authorized by law," their written demand was privileged under 12 O.S.2001 § 1443.1.

¶5 Burkett responded, acknowledging that the communication would have been privileged under § 1443.1, but, because Taxpayers had failed to file a *verified* demand, as specified in § 373, the communication was not privileged. Taxpayers disputed this interpretation of the law by Burkett, but did amend their demand to include a verification. Burkett responded by claiming the communication was still not privileged because the signatures of Taxpayers were not notarized.

¶6 Subsequently, the City of Oklahoma City (City) filed a declaratory judgment suit against the OCURA and two public sector defendants to determine the lawfulness of certain agreements and transactions about which Taxpayers had complained. Taxpayers attempted to intervene in that action but were denied intervention.[3] OCURA filed a declaratory judgment action against Taxpayers seeking to confirm the validity of the transactions about which Taxpayers complained. In that lawsuit, Burkett filed a third-party claim on behalf of City, and Tax-

payers filed their own third-party petition—a "*qui tam*"[4] claim brought pursuant to § 373.[5]

¶7 On May 13, 2003, Burkett filed this action for libel against Taxpayers. Taxpayers sought summary judgment on the basis that the communication was privileged; they also argued it was Burkett who had caused the publication of paragraph 32 by reading it aloud at the televised City Council meeting. Burkett filed his own motion seeking partial summary adjudication that the contents of paragraph 32 were false and not privileged. The Trial Court granted judgment in favor of Taxpayers, finding that the written demand was filed pursuant to 2001 § 373, and as such was a privileged communication as specified in § 1443.1. Burkett appeals.

## STANDARD OF REVIEW

¶8 The appellate standard of review of a trial court's grant of summary judgment is *de novo. Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. On review, this Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Id.* All inferences and conclusions to be drawn from the evidentiary materials will be viewed in the light most favorable to the non-moving party. *Id.* This Court will reverse the grant of summary judgment when it appears from the evidentiary materials that the material facts concerning issues raised in the case are conflicting or, if the material facts are undisputed, reasonable persons in the exercise of fair and impartial judgment might reach different conclusions from those facts. *Buck's Sporting Goods, Inc. v. First Nat'l Bank & Trust Co. of Tulsa*, 1994 OK 14, ¶11, 868 P.2d 693, 697–98. In a summary judgment review an appellate court has the same power as the trial

---

3. For disposition of that lawsuit see *City of Oklahoma City v. Oklahoma City Urban Renewal Authority*, 1999 OK 71, 988 P.2d 901, which has been designated "Tal 1" by the Oklahoma Supreme Court in a third "Tal" lawsuit, *State ex rel. Tal v. City of Oklahoma City*, 2002 OK 97, 61 P.3d 234.

4. A *qui tam* action is defined as "[a]n action brought under a statute that allows a private

person to sue for a penalty, part of which the government or some specified public institution will receive." Black's Law Dictionary, 1262 (7th Ed.1999).

5. For disposition of this lawsuit, see *State ex rel. Tal v. City of Oklahoma City*, 2002 OK 97, 61 P.3d 234.

court to resolve any disputed issues of law. *U.S. Mortgage v. Laubach,* 2003 OK 67, ¶ 31, 73 P.3d 887, 900.

### DISCUSSION OF ISSUES

█ ¶ 9 For his propositions of error Burkett poses two questions which may be summarized as contentions that the "unverified" written demand of Taxpayers was not privileged, but was indeed libel per se. We disagree and find that the communication was privileged. This conclusion is dispositive of the appeal.

█ ¶ 10 The question is largely one of law. Burkett does not dispute that the written demand of Taxpayers was filed specifically as a prerequisite to filing a *qui tam* lawsuit, which was subsequently filed as described above. In *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 32, 61 P.3d 234, 249, the Oklahoma Supreme Court, upon consideration of an award of attorney fees against Taxpayers, refused to characterize the *qui tam* litigation as totally frivolous, stating:

> In that it was not objectively unreasonable to have filed the *qui tam* suit and to have mounted a response to defendants' motions to dismiss based on preclusion, and because the record does not support a conclusion there was some overriding need for a monetary attorney fee sanction, the trial judge abused his discretion in using his inherent power against plaintiffs as he did. . . .

Thus, there is simply no dispute that the written demand of taxpayers was a filing required by law, § 373, with a legislative body—the City Council of Oklahoma City. This filing falls squarely under the provision of § 1443.1, which provides that "[a] privileged publication or communication is one made . . . [i]n any legislative or judicial proceeding or any other proceeding authorized by law." This privilege, more usually examined in regard to pleadings or utterances in judicial proceedings, has been called absolute. *Pryor v. Findley,* 1997 OK CIV APP 74, ¶ 3, 949 P.2d 1218, 1219; *Kirschstein v. Haynes,* 1990 OK 8, 788 P.2d 941. The purpose of the immunity is to keep the "paths which lead to the ascertainment of truth . . . as free and unobstructed as possible." *Cooper v. Parker–Hughey,* 1995 OK 35, ¶ 11, 894 P.2d 1096, 1098–99 (quoting *Briscoe v. LaHue,* 460 U.S. 325, 332–34, 103 S.Ct. 1108, 1114–15, 75 L.Ed.2d 96 (1983)). This purpose seems equally, if not more, relevant to communications directed at a legislative body as a prerequisite to bringing a citizen lawsuit to recover money or property belonging to the state or political subdivision.

¶ 11 Burkett, acknowledging that a written demand strictly in compliance with § 373 would be privileged, claims Taxpayers' failure to verify the demand in this instance (as specified in § 373) strips the communication of its privileged nature. We disagree. Section 1443.1 establishes the privileged nature of the communication, and that law has no requirement of verification or notarization. Furthermore, to strip away the statutory privilege, based on technical defects in a complaint or demand, would likely have a substantial chilling effect on private citizens' use of the *qui tam* law. That would be an "obstruction of the path which leads to the ascertainment of truth" which the legislature certainly did not intend, and courts of this state should not countenance.

### CONCLUSION

¶ 12 We find the Trial Court did not err in determining that the written demand filed by Taxpayers with the City Clerk of Oklahoma City was a privileged publication/communication, or in granting judgment against Burkett in this libel action. Accordingly, the judgment of the lower court is AFFIRMED.

TAYLOR, P.J., and GOODMAN, J., concur.