2003 OK CIV APP 47

**Jim BROWN, Plaintiff/Appellee,**

**v.**

**George CURTIS and George Curtis, Jr., Defendants/Appellants,**

**and**

**George Cheek and Jay Belt, Defendants.**

**No. 97,727.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 11, 2003.

Rehearing Denied April 18, 2003.

Leslie C. Weeks, Jeffrey A. Glendening, Rodolf & Todd, Tulsa, OK, for Plaintiff/Appellee.

James C. Milton, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, OK, for Defendants/Appellants.

RONALD J. STUBBLEFIELD, Judge:

¶ 1 Defendants, George Curtis and George Curtis, Jr. (the Curtises), appeal from orders of the Trial Court denying their request for a discovery-related attorney fee award/sanction against Plaintiff, Jim Brown (Brown), and denying their motion to strike certain evidence. Based on review of the record on appeal and applicable law, we affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶ 2 Brown originally brought the action for breach of contract against the Curtises and additional defendants, George Cheek and Jay Belt, alleging that all of the defendants had breached indemnity and debt-assumption provisions contained in a stock sale agreement whereby Brown sold them shares of common stock in Anadarko Nursing Center, Inc.

¶ 3 The Curtises filed a request for production of documents by Brown, and later an interrogatory,[1] both of which went unanswered by Brown for a considerable period of time. The Curtises filed a motion seeking dismissal of Brown's claim for failure to prosecute or, in the alternative, an order by the Trial Court compelling Brown to comply with discovery requests. There was a considerable delay before Brown responded, but when he finally responded, he claimed the alleged insufficiencies and delays did not warrant dismissal. He further claimed that at the time his response was due, it was contemplated that another, related lawsuit in federal

court would resolve all claims between Brown and the Curtises[2]—"that the federal action would have essentially subsumed this lawsuit and obviated the need for duplicative discovery." Brown also argued that the interrogatory requested information which was confidential, irrelevant and not calculated to lead to discovery of admissible evidence.

¶ 4 A hearing was held on the Curtises' motion, but the hearing was not transcribed. What occurred as part of the hearing is vital to this case.

¶ 5 The Trial Court made certain rulings from the bench. It overruled the Curtises' motion to dismiss, but sustained their motion to compel, ordering Brown to respond to the discovery requests and produce documents supporting his claims. The parties still disagreed as to some issues involving the discovery requests, and the Trial Court directed counsel to confer on these issues and report back regarding their resolution. The parties apparently reached some agreement that would involve entry of a protective order, allowing Brown to limit his response to the interrogatory and to redact portions of produced documents which might contain personal financial information. The parties reported this to the Trial Court, and the Court excused the parties.

¶ 6 In his appellate answer brief, Brown states that when the parties conferred at the direction of the Trial Court (he refers to this as a "discovery conference"), among the multiple issues they discussed was the Curtises' inability to pay any judgment that might be entered against them, and their intention to file bankruptcy within ten days after the entry of any judgment. Counsel for Brown indicated he would discuss the Curtises' financial condition with his client and discern Brown's intentions relative to continued prosecution of his claims. The Curtises do not

---

1. The interrogatory provided: "Identify all persons or entities to whom Plaintiff provided or submitted financial statements, financial disclosures, or affidavits of financial condition prepared by Plaintiff or at his direction regarding Plaintiff's financial condition, during the period from the date of the alleged execution of the contract alleged in Plaintiff's Petition to the date of Plaintiff's response to this Interrogatory."

2. The stock sale agreement that was the subject of this litigation also had contained a provision requiring that the Curtises, Cheek and Belt assume the current nursing home lease with landlord, OK AN Associates, L.P. of California. On July 26, 2001, OK AN filed a complaint in federal court seeking lease payment arrearage. Brown filed an answer and cross-claim against George Curtis in the federal court action.

dispute this account of events in their appellate briefs.

¶ 7 Counsel for Brown subsequently requested, and later received from counsel for the Curtises, written confirmation dated March 12, 2002, of their intent to file bankruptcy if Brown prevailed in the action. The letter characterized Brown's prosecution of his state court claims as an "exercise in futility." The letter was prefaced: "This is a communication made as part of negotiations to compromise a disputed obligation, and is thereby inadmissible pursuant to [12 O.S. 2001 § 2408]."

¶ 8 On March 8, 2002, the Curtises filed an application, under 12 O.S.2001 § 3237(A)(4), for the award of attorney fees and costs incurred in connection with their motion to compel. They sought $1,988 in attorney fees and costs in the amount of $69.15.

¶ 9 On March 28, 2002, the date his discovery responses were due, Brown filed a "Partial Dismissal Without Prejudice," dismissing the Curtises from the action. Defendants Cheek and Belt remained parties to the lawsuit. The Curtises, through their counsel, stipulated that a pending motion to settle journal entry was rendered moot by Brown's dismissal. However, they continued to press their motion for attorney fees and costs, claiming that the Trial Court retained jurisdiction to consider the application.

¶ 10 The Trial Court ordered further briefing on the issue of continuing jurisdiction. In his brief concerning the effect of his dismissal without prejudice, Brown claimed there was nothing "sinister" about his dismissal of the Curtises from the lawsuit, attaching a copy of the "bankruptcy" letter written by the Curtises' counsel, to show their stated intent to file bankruptcy.

¶ 11 The Curtises also briefed the issue of jurisdiction, but a significant portion of their brief assailed Brown's filing of the "bankruptcy" letter, calling it impertinent, inadmissible and "the most egregious disclosure of settlement discussions." They requested that all references to the letter in Brown's brief be stricken, that the brief be placed under seal, and that a monetary sanction be imposed against Brown's counsel for such unacceptable conduct.

¶ 12 The Trial Court denied the Curtises' application for fees/costs, based on these findings: (1) It had granted the Curtises' motion to compel, but Brown had dismissed his case against them prior to expiration of the time to respond; (2) It retained jurisdiction to assess fees for misconduct or violation of orders prior to dismissal; but, (3) The conduct of Brown was "not so shocking, neglectful or disregard [sic] that this Court should assess fees in this case."

¶ 13 The Curtises then filed a "Motion to Strike and for Protective Order Removing Material from the Public Record," asserting that the order denying fees did not address their request for protection of "confidential settlement communications." They claimed that allowing the information regarding their financial condition to stay in the record would cause them embarrassment and undue hardship. Brown defended his use of the document, claiming his purpose in discussing the Curtises' financial situation as the basis for his dismissal was to rebut and respond to representations made by their counsel at the earlier hearing—that his dismissal was actually motivated by fears concerning discovery.

¶ 14 In its order filed July 9, 2002, the Trial Court found that the offending "bankruptcy" letter was properly filed by Brown to inform the Court as to why he dismissed his case and contained information relevant to the issue of fees and costs. The Trial Court denied the Curtises' motion to strike the material, but did sustain their motion for protective order, based on a finding that it was not necessary for the material "to be available to the general public." The Trial Court ordered that the material objected to "should be sealed in the file."

¶ 15 The Curtises first appealed from the order denying their attorney fees and costs. They subsequently filed an amended petition in error to add an appeal from the order denying their motion to strike.

### A JURISDICTIONAL MATTER

¶ 16 Brown has filed a motion to dismiss this appeal, citing 12 O.S.2001 § 994(A). He

argues that this case does not involve an interlocutory order appealable by right, and that there is no final, appealable order in the case because two of the named defendants, Cheek and Belt, remain parties in the lower court. Brown cites the recent case, *Conterez v. O'Donnell*, 2002 OK 67, 58 P.3d 759, as controlling authority. While the *Conterez* case does hold that, generally, the denial of sanctions under 12 O.S.2001 § 3230(E)(1) is not at once appealable, we do not find the case applicable to the facts herein.

¶ 17 The plaintiff in *Conterez* had brought a medical malpractice action against two defendants. A discovery dispute arose when the plaintiff deposed a pathologist, who was not a party in the case. The plaintiff moved for sanctions, under 12 O.S.2001 § 3230(E)(1), against counsel for the non-party physician/ witness, based on that attorney's instructions to his client not to answer certain questions at the deposition, and his adjournment of the deposition hearing. The trial court denied the plaintiff's request for sanctions by order entered April 25, 2000. Nearly eight months after the denial of sanctions, the parties to the lawsuit settled, and the case was voluntarily dismissed by agreed order. *Id.* at ¶¶ 2–3, 58 P.3d at 760.

¶ 18 The plaintiff in *Conterez* filed an appeal from the trial court order denying sanctions. Division IV of this Court dismissed the appeal *sua sponte*, on grounds that (1) the appeal time had expired thirty days after entry of the April 25 order, and (2) the plaintiff lost standing as an aggrieved party to claim harm from the denial because his interest in enforcing sanctions was extinguished by his settlement of the principal tort claim. *Id.* at ¶ 4, 58 P.3d at 760. On certiorari the Oklahoma Supreme Court vacated the opinion of Division IV but also ordered the appeal dismissed. *Id.* at ¶ 5, 58 P.3d at 760.

¶ 19 Citing federal jurisprudence, the Supreme Court stated that the denial of discovery-related sanctions is generally not considered final until the district court litigation comes to an end. "This is so because **the trial court is not bound by, and may hence reconsider,** all of its mid-litigation rulings at any time before the case comes to an end."

*Id.* at ¶ 7, 58 P.3d at 761–62. The Court also found that the order from which the appeal was sought failed to meet the "**two-prong finality test** for appealability of prejudgment orders under the provisions of 12 O.S.2001 § 953." *Id.* at ¶ 8, 58 P.3d at 762 (footnotes omitted). The Court stated: "The order refusing to sanction the witness' lawyer neither conclusively **settles** the nonsanctionability of the lawyer's actions nor does the ruling's effect leave the aggrieved party plaintiff without any further relief at nisi prius." *Id.* (footnote omitted). However, because the plaintiff had settled the case, and the final agreed order of dismissal was not a reviewable order, no corrective relief could be sought from the "inchoately reviewable" order denying sanctions for want of an appealable disposition in the case. *Id.* at ¶¶ 11–12, 58 P.3d at 762–63.

¶ 20 The procedural posture of this case is markedly different from that in *Conterez*. After the dismissal of the Curtises by Brown, the Trial Court retained limited jurisdiction to consider the Curtises' motion for attorney fees, which was addressed to Brown's pre-dismissal discovery-related conduct. *See Bentley v. Hickory Coal Corp.*, 1992 OK CIV APP 68, 849 P.2d 417. The order the Trial Court entered is a final disposition of the Curtises' claimed right to attorney fees and is not subject to reconsideration in the dismissed case against the Curtises.

¶ 21 Unlike the order in *Conterez*, the order in this case does satisfy the "two-prong finality test." It (1) conclusively determines the disputed question that was before the Trial Court, and (2) leaves the Curtises without any relief at the trial court level because they are precluded from proceeding further in the case. *Hammonds v. Osteopathic Hosp. Founders Ass'n*, 1996 OK 54, ¶ 3, 917 P.2d 6, 7. The order denying fees and the collateral order denying the Curtises' motion to strike constitute "an *end-of-the-line* disposition" of the only remaining issues below affecting these parties and, thus, are appealable as final under 12 O.S.2001 § 953. *Hammonds*, 1996 OK 54 at ¶ 4, 917 P.2d at 7. And, unlike the order in *Conterez*, the appealability of both orders stands preserved and has not been "mooted" by conduct of the Curtises.

Finally, the only parties remaining in the case are not aligned with the Curtises, and if the Curtises cannot now appeal, they are left at the mercy of those other remaining parties who might destroy any right the Curtises have for appellate review, if they reach a disposition of the lawsuit which is not appealable.

¶ 22 In view of the particular circumstances of this case, we find the order denying the Curtises' application for attorney fees and costs under section 3237(A) to be final and appealable under section 953. Accordingly, we deny Brown's motion to dismiss the Curtises' appeal.

## STANDARD OF REVIEW

¶ 23 A trial court's ruling on a request for sanctions will not be disturbed absent a demonstrated abuse of discretion. *Payne v. DeWitt*, 1999 OK 93, ¶ 18, 995 P.2d 1088, 1096. *See also State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, 61 P.3d 234; *Meadows v. Wal–Mart Stores, Inc.*, 2001 OK 25, 21 P.3d 48. To reverse for abuse of discretion, this Court must determine that "the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." *Moshe Tal* at ¶ 3, 61 P.3d at 240. The appellate court "abides the presumption the lower court decision on the sanction question is legally correct and cannot be disturbed unless contrary to the weight of the evidence or to a governing principle of law." *Id.* "If legally correct, the trial judge's decision may not be reversed because of faulty reasoning, an erroneous finding of fact, or the consideration of an immaterial issue." *Id.*

¶ 24 When a trial court grants a motion for an order compelling discovery, section 3237(A)(4) authorizes it to also grant to the moving party the reasonable expenses, including attorney fees, incurred in obtaining the order. Indeed, the section requires that such expenses be awarded to the prevailing party, "unless the court finds that the opposi-

tion to the motion was substantially justified *or that other circumstances make an award of expenses unjust.*" (Emphasis added.)

## DISCUSSION OF ISSUES

¶ 25 On appeal, the Curtises assert that the Trial Court retained jurisdiction to assess fees against Brown, and erred in refusing to award them the requested sanction. They claim that the Trial Court committed error in (1) basing its decision on an erroneous standard; (2) not ruling that their application was deemed confessed by Brown; and, (3) in applying an incorrect standard in consideration of their application and considering inadmissible and irrelevant information.

### I. Retained Jurisdiction After Voluntary Dismissal

¶ 26 The lower court actually ruled that it did retain jurisdiction over the attorney fee application after Brown's dismissal. Retention of jurisdiction is only an issue because Brown, in his answer brief, asserts that the effect of his dismissal was to deprive the Trial Court of jurisdiction over the subject matter and the parties. He claims it was error for the Trial Court to even consider the Curtises' attorney fee application. He claims that the rationale of *Bentley v. Hickory Coal Corporation*, 1992 OK CIV APP 68, 849 P.2d 417, relied on by the Curtises and the Trial Court, is inapposite. According to Brown, the analysis in *Bentley* applies only to sanctions awarded under section 3237(B) for failure to comply with a discovery order, and no such order was entered. He distinguishes a quest for attorney fees under section 3237(A) from a quest for sanctions under subsection B.

¶ 27 We are not persuaded by Brown's argument. Section 3237 is entitled "Failure to Make or Cooperate in Discovery; Sanctions." Like its federal counterpart— Fed. R. Civ. P. 37(a)(4), 28 U.S.C.A. (1992)[3] —the purpose of section 3237(A)(4) is to ad-

---

**3.** We cite the federal rule because, whenever Oklahoma Discovery Code provisions closely parallel those in the federal rules, federal jurisprudence is deemed instructive. *Payne v. DeWitt*, 1999 OK 93, ¶ 8, n. 6, 995 P.2d 1088, 1092, n. 6.

The provisions of this federal rule are virtually identical to section 3237(A)(4). The federal rule was amended in 1993 and 2000. 28 U.S.C.A. (West Supp.2002).

dress abusive discovery practices and deter abusive resort to the judiciary. The Advisory Committee Notes on Rule 37(a)(4), addressing the provision for award of expenses of a motion to compel, state that "the potential or actual imposition of expenses is virtually the sole formal *sanction* in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery." (Emphasis added.)

¶ 28 We agree with the Court's conclusion in *Bentley* that trial court jurisdiction to impose discovery sanctions, like the jurisdiction to impose sanctions under 12 O.S.2001 § 2011, survives a voluntary dismissal. We find no basis for the assertion that the provision for a conduct-based award of expenses under subsection 3237(A)(4) should be treated differently from an award of expenses under the provisions of subsection (B).

## II. Effect of Rule 4(e)

¶ 29 The Curtises assert that under Oklahoma District Court Rule 4(e), 12 O.S. 2001, ch. 2, app., they were "automatically" entitled to an award of attorney fees upon Brown's failure to timely respond to their application. We disagree.

¶ 30 Case law interpreting the version of Rule 4(e) in effect at the time of the Curtises' application states that, despite the mandatory "shall be deemed confessed" language of the rule, trial courts retain some discretion to review motions to ensure that the requested relief is not granted in violation of the law. *Westlake Presbyterian Church, Inc. v. Cornforth,* 1996 OK CIV APP 159, ¶ 6, 940 P.2d 1208, 1210.[4] Furthermore, an award of attorney fees must be supported by law and fact. *See Liberty Bank & Trust Co. of Tulsa, N.A. v. Murray,* 1996 OK CIV APP 39, ¶¶ 6–8, 924 P.2d 781, 783. The Oklahoma Supreme Court has stated that an award of attorney fees under section 3237—like any other attorney fee award—"must be set upon and supported by evidence presented in an adversary proceeding in which the facts and computation upon which the trial court rests its determination are set forth in

the record with a high degree of specificity." *Payne,* 1999 OK 93 at ¶ 18, 995 P.2d at 1096 (footnotes omitted). Accordingly, we conclude that the Trial Court did have discretion in the matter, and was correct in not granting a default award under Rule 4(e).

## III. Abuse of Discretion By the Trial Court/Standard Applied/Inadmissable and Irrelevant Evidence

¶ 31 The Curtises argue that the "statutory structure" of section 3237(A)(4) placed the burden on Brown to show that his opposition to the motion to compel was "substantially justified," and that he failed to make this showing because he did not timely file a response to their application for attorney fees. According to the Curtises, the Trial Court relieved Brown of his burden and erroneously applied a standard which shifted to them the burden of showing that Brown's conduct constituted abusive discovery practice. In a proposition in their reply brief, they claim this was an error of such magnitude that the order should be reversed "on this basis alone." In making this argument, they focus on the Trial Court's finding that Brown's conduct was not so "shocking, neglectful or disregard [*sic*] that this Court should assess fees in this case."

¶ 32 Referring again to the federal rules for assistance, we note that the test of substantial justification is not defined in the comments to Rule 37(a)(4). However, the Advisory Committee's Notes specifically point out that the rule is in no way intended to narrow the trial court's discretion. In any event, the Curtises' argument overlooks the fact that, under both the federal rules and the Oklahoma statute, a trial court need not award expenses of a motion to compel where it finds such an award unjust. And, if a motion to compel is granted in part and denied in part, a trial court may apportion the expenses incurred in relation to the motion in a "just manner." Section 3237(A)(4).

¶ 33 As previously noted, the record on appeal lacks transcripts of the hearings before the Trial Court on the Curtises' motion

---

4. A recent amendment to Rule 4(e) provides that if briefs in opposition to a motion are not timely filed the motion "may be deemed confessed." 12 O.S. Supp.2002, ch. 2. app.

to compel and the subsequent hearing on their application for attorney fees. Although the appellate briefs reveal some agreement between the parties as to what transpired at these hearings, significant areas of dispute remain.

¶ 34 For example, there remains a substantial dispute as to the tenor of the Trial Court's inquiries to counsel at the hearing on the motion to compel. In his answer brief, Brown claims that the Trial Court directed most of its inquiry to the Curtises' counsel, questioning the relevance and ultimate admissibility of most of the requested documents and the sole interrogatory. The Curtises' reply is to accuse Brown of engaging "in an eleventh-hour effort to put a favorable spin on his objections to [their] discovery requests."

¶ 35 There is no contemporaneous written memorialization of the outcome of the motion to compel. There is only a recitation in the Trial Court's subsequent order denying attorney fees that "the Court granted Defendants' Motion to Compel." However, the record reveals that the Curtises were not the clear "winner." The Curtises' proposed order and motion to settle journal entry (rendered moot by the dismissal) reveal that the order for Brown to respond was subject to certain restrictions. The scope of the requested discovery from Brown was to be limited by a protective order—something even the Curtises do not deem inappropriate.

¶ 36 Another area of dispute involves what transpired at the post-dismissal hearing on the Curtises' application for attorney fees. The Curtises assert that Brown repeatedly brought up the Curtises' financial condition at the hearing, when it had no bearing on the issue before the Trial Court. On the other hand, Brown claims that he was compelled to advise the Trial Court of the reasons behind his dismissal after the Curtises had first argued to the Trial Court that they were entitled to attorney fees because Brown had resisted the discovery and had dismissed his claim because of concerns over what would have to be produced.

¶ 37 The Trial Court was in the best position to determine whether an award of the requested sanctions was warranted and served the purposes of section 3237(A) or would be unjust under the circumstances. We do not view the choice of words in the order denying attorney fees as conclusively demonstrating that the Trial Court implied an improper standard in reaching its decision.

¶ 38 Furthermore, in making its determination, the Trial Court had discretion to consider the arguments in and attachments to Brown's supplemental brief on "jurisdiction" as an out-of-time response to the Curtises' motion for attorney fees. That it did so is reflected by this statement in the Trial Court's later order on the Curtises' motion to strike: "That the material sought to be stricken ... was filed in response to Defendants' Motion to Assess Costs and Attorneys Fees."

¶ 39 In another proposition in their reply brief, the Curtises claim that the attached letter regarding "confidential financial information" constituted "settlement communications" and was inadmissible and irrelevant to a determination of whether to award fees and costs. They claim (again) that the Trial Court's order denying their request for fees and costs should be reversed "solely on the basis that the Trial Court incorrectly determined that the inadmissible and irrelevant settlement communication was relevant to the issue of [their] request for fees."

¶ 40 However, the Curtises have cited no Oklahoma authority that supports this claim of error. Even if we were to assume that the Curtises' characterization of the letter as "settlement communications" is accurate, the fact that they labeled it inadmissible pursuant to 12 O.S.2001 § 2408 did not render it inadmissible per se. *See F.D.I.C. v. Moore,* 1995 OK CIV APP 88, 898 P.2d 1329. The letter's relevancy was a matter addressed to the sound discretion of the Trial Court. *See American Nat'l Bank & Trust Co. of Sapulpa v. BIC Corp.,* 1994 OK CIV APP 70, 880 P.2d 420. Where the letter went to the heart of Brown's motivation for dismissing his lawsuit against the Curtises, we find no reversible error in the Trial Court's relevancy determination and its refusal to strike the letter.

## SUMMARY AND CONCLUSION

¶ 41 We find the appealed order to be a final, appealable disposition. After careful review, we find no abuse of discretion on the part of the lower court in declining to award fees/costs, or in the Trial Court's refusal to strike certain evidence. We further reject contentions in regard to the Trial Court's application of an improper standard and consideration of inadmissible material. Accordingly, the orders denying the Curtises' request for attorney fees and costs and denying the motion to strike must be affirmed.

¶ 42 AFFIRMED.

COLBERT, V.C.J., and TAYLOR, P.J., concur.