2007 OK CIV APP 84

**GARAGE STORAGE CABINETS, L.L.C., an Oklahoma Limited Liability Company, Plaintiff/Appellant/Counter–Appellee,**

v.

**Don MITCHELL and Mitchell Garage Cabinet Systems, Inc., an Oklahoma Corporation, Defendant/Appellee/Counter–Appellant.**

No. 103,238.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 17, 2007.

---

William J. Baker, Hert, Baker & Koemel, P.C., Stillwater, OK, for Plaintiff/Appellant/Counter–Appellee.

Alan Synar, Edmond, OK, for Don Mitchell/Defendant/Appellee/Counter–Appellant.

Michael Minnis, Doerner, Saunders, Daniel & Anderson, L.L.P., Oklahoma City, OK, for Mitchell Garage Storage Cabinets, L.L.C./Defendant/Appellee.

LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant/Counter–Appellee Garage Storage Cabinets, L.L.C. (GSC) appeals the trial court's order granting attorney fees to Defendants/Appellees/Counter–Appellants Don Mitchell (Mitchell) and Mitchell Garage Cabinet Systems (MGCS) after entry of judgment in favor of Mitchell and MGCS on a finding that the lawsuit brought by GSC was frivolous and had been filed in bad faith. By counter-appeal, Defendants challenge the trial court's award as inadequate. We hold the trial court did not abuse its discretion in entering a partial award of attorney fees and affirm the order in its entirety.

## HISTORY OF THE LITIGATION

¶ 2 GSC filed this lawsuit in May of 2003, claiming MGCS and Mitchell, competitors in the business of manufacturing and selling garage utility cabinets, misappropriated GSC's trade name and trade secrets and tortiously interfered with GSC's exclusive dealer contracts. John Schlimpert (Schlimpert), the company's president, verified the Petition under oath. When deposed, Schlimpert testified that the lawsuit had been filed for the sole purpose of putting MGCS out of business.

¶ 3 Relying on Schlimpert's testimony, Mitchell and MGCS sought summary judgment against GSC and sanctions against Plaintiff's counsel. After a hearing on October 28, 2004, the trial court granted the motion for summary judgment, finding that, notwithstanding the allegations set forth in the Petition, Schlimpert admitted that the company held no trade secrets and had no exclusive dealer contracts. The court also held that no information had been presented showing that MGCS had stolen the Plaintiff's trade name. In addressing Schlimpert's admissions and motivations, the court stated on its own accord:

> I(a)m amazed in some respects that the plaintiff said that, and he said it more than once, said his purpose was to put them out of business. And when pressed about it, 'Well, if you don't get that, you know, what is your claim worth here?' And he said, I have no idea basically. Because his stated purpose was to put them out of business.... I think [that is] very relevant to the issues before the Court at this point, because I think the lawsuit was brought in bad faith. I think it's a frivolous lawsuit. And I think, under the plaintiff's stated purpose, he was bringing it just to be vexatious to the defendants. I think it's vexatious litigation.

The trial court denied the motion to sanction Plaintiff's counsel, stating:

> I don't think Mr. Baker can be responsible for the stated bad faith aims of his own client. His client says what his client's motivation is in filing the lawsuit, but I think Mr. Baker can't be attributed with that motivation. Mr. Baker is his legal representative, and I don't believe that he should be responsible for ... what I believe to be a bad faith reason why Schlim-

pert brought the case against the defendant.

No appeal was taken of the trial court's entry of summary judgment or the denial of the motion for sanctions against GSC's attorney.

¶ 4 Defendants then filed original and supplemental motions to assess costs and attorney fees, to which GSC did not respond prior to hearing conducted on the issue. At hearing, Defendant sought summary relief based upon Plaintiff's failure to respond to the motion in accordance with district court rules, which the trial court denied. The trial court then conducted a hearing on the merits.

¶ 5 GSC confessed costs, but denied the Defendants' demand for the assessment of attorney fees as a sanction. Plaintiff offered expert testimony regarding the amount sought by the Defendants. The trial court took the matter under advisement and subsequently entered an order awarding the Defendants $31,572.90 in attorney fees, $18,170.60 less than the amount sought by Mitchell and MGCS.[1] GSC then filed this appeal, challenging the trial court's issuance of sanctions against the company as improper in law under either 12 O.S. § 2011 or 12 O.S.2004 Supp. § 2011.1, or in equity pursuant to the inherent equitable authority maintained by the trial courts to assess costs, including attorney fees, in limited circumstances.[2] Defendants counter-appeal, challenging the sufficiency of the fee award.

## STANDARD OF REVIEW

¶ 6 On appellate review, we are bound to affirm the trial court's imposition of sanctions absent a finding the trial court abused its discretion. *Hammonds v. Osteopathic, Hospital Founders Association,* 1996

---

1. The trial court's award and the amount of attorney fees sought by Mitchell and MGCS is broken out as follows:

| Defendant | Demand | Award | Attorney |
| --- | --- | --- | --- |
| Mitchell | $14,265 | $11,277.50 | Alan Synar |
| MGCS | $31,836 | $18,096.12 | Michael Minnis |
| Mitchell/MGCS | $ 3,282.50 | $ 2,199.28 | Tim Mitchell |

Tim Mitchell initially represented both Don Mitchell and MGCS. The parties later determined a potential conflict of interest existed and retained separate counsel. Subsequently, Michael Minnis was engaged to represent MGCS and

Alan Synar entered his appearance on behalf of Don Mitchell.

2. In their briefs, all parties agree that, not withstanding argument presented to the lower court, neither 23 O.S. § 103 nor 23 O.S. §§ 929 and

OK 100, ¶ 6, 934 P.2d 319, 322; *State ex rel., Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 2, 61 P.3d 234, 240. To reverse, we must find the trial judge reached a conclusion that was clearly in error and against all reason and evidence. *Id* at ¶ 2, 61 P.3d at 240. (Citation omitted.) While the appellate court is obligated to examine and weigh proof found in the record, it is presumed that the decision reached by the lower court on the sanction question is legally correct and must not be disturbed unless contrary to the governing principle of law or the weight of the evidence. *Id.*

### PLAINTIFF'S APPEAL

### 12 O.S. § 2011

¶ 7 GSC argues that the trial could not have considered 12 O.S. § 2011 when granting the motion for attorney fees based upon Defendant Mitchell's [3] failure to comply with the "safe harbor" provision set out in

§ 2011(C)(1)(a).[4] GSC contends that by failing to serve the motion for sanctions on the company twenty-one (21) days in advance of its filing the motion with the court, the application was no longer viable and, therefore, could not have been considered. Mitchell, in turn, argues that notice was provided GSC in the April 12, 2004 Reply to Objection to Motion for Summary Judgment and related motions [5] wherein Mitchell set forth specific violations of § 2011(B) [6] and a demand for GSC to either withdraw or amend its Petition. Mitchell filed a motion for sanctions with the court on December 3, 2004.

¶ 8 Sanctions may be obtained under § 2011 by motion submitted in accordance with § 2011(C)(1)(a). The Oklahoma Supreme Court has previously considered the significance of the safe harbor procedure established under § 2011(C)(1)(a). *Tal Technologies, Inc. v. L.D. Rhodes Oil Co.,* 2000 OK 38, 4 P.3d 1256. In that case, the Su-

---

942 provide authority for an award of attorney fees in this case.

3. MGCS advised the trial court at the hearing conducted on November 30, 2005 that it had not complied with the safe harbor provision and did not rely upon 12 O.S. § 2011 in seeking attorney fees and costs.

4. 2 O.S. § 2011(C)(1)(a)
C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.
1. HOW INITIATED.
a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

5. The motion filed by Defendant Mitchell on April 12, 2004 is captioned "Reply to Objection to Motion for Summary Judgment, Objection to Motion for Continuance and Objection to Motion for Leave to Amend Pleadings".

6. 12 O.S. § 2011(B) provides as follows:

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

preme Court held that a two-step process must be followed under the statute when moving for the imposition of sanctions. First, the motion must be made separate and apart from other requests and must describe the specific violations of. § 2011(B) alleged. *Id.* at ¶ 7, 4 P.3d at 1258. Second, the motion may not be filed with or presented to the court unless the opponent has been provided a twenty-one (21) day "safe harbor" period and fails to withdraw or amend the offending document within the designated period. *Id.* Sanctions may later be imposed only where the offending document is neither withdrawn nor corrected during the safe harbor period. *Id.* at ¶ 13, 4 P.3d at 1259. Compliance with the safe harbor provision is mandatory. *Id.* at ¶ 11, 4 P.3d at 1259. (Citations omitted.)

 ¶ 9 In the record before us, we discern no evidence demonstrating that GSC was served with a motion for sanctions at any time prior to Mitchell's filing the motion with the court on December 3, 2004. Notwithstanding Mitchell's argument to the contrary, the inclusion of the motion for sanctions in its April 12, 2004 pleading cannot be considered a proper motion for sanctions as contemplated under § 2011(C)(1)(a) because the motion for sanctions was neither filed separate and apart from other issues and requests, nor was the motion served on the offending party in advance of the filing date.

¶ 10 By its failure to comply with the procedural requirements of § 2011(C)(1)(a), we hold Mitchell's § 2011 claim could not have been relied upon by the trial court in awarding attorney fees and costs. Finding the motion for sanctions invalid on procedural grounds, we find no reason to consider the substantive challenges made by GSC as to the applicability of § 2011 to the facts of this case.

## INHERENT EQUITABLE AUTHORITY

¶ 11 GSC further contends that the trial judge could not have considered its inherent equitable authority in awarding fees based solely upon a finding Plaintiff had "frivolous" grounds for filing the lawsuit when issuing summary judgment *absent* also finding Plaintiff had engaged in specific acts of litigation misconduct. Mitchell and MGCS argue the

trial court used its inherent equitable authority in awarding attorney fees, as costs, as punishment for Plaintiff's pursuit of a meritless claim.

 ¶ 12 The Oklahoma Supreme Court has recognized the inherent equitable authority granted the trial court to award attorney fees, as costs, against a party for litigation misconduct determined vexatious, wanton, oppressive or otherwise in bad faith. *City National Bank v. Owens,* 1977 OK 86, ¶ 15, 565 P.2d 4, 8. This authority is an exception to the "American Rule" which generally prohibits the courts from awarding attorney fees to the prevailing party, absent statutory or contractual authority, *Id.* at ¶ 11, 565 P.2d at 7. The trial court's power springs from the original equitable authority granted the chancellor to award attorney fees as justice required. *Id.* at ¶ 13, 565 P.2d at 8. (Citation omitted.)

¶ 13 The inherent equitable authority granted the trial court to impose sanctions has been held by the United Stated Supreme Court, and embraced by the Supreme Court of Oklahoma, as both broader and narrower than Rule 11 (12 O.S. § 2011's federal counterpart): broader, in that its extensive reach covers the full range of litigation abuses without regard to written documents, filings or advocacy; narrower, based upon the court's obligation, prior to imposing sanctions, to find the offending party either acted in bad faith or in defiance of a court order. *Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 27, 61 P.3d 234, 248 (citing *Chambers v. NASCO,* 501 U.S. 32, 46–47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991),), *reh. denied,* 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991).

 ¶ 14 In this case, there can be little doubt that Plaintiff's actions were vexatious and frivolous as made clear by the continued pursuit of the lawsuit absent the presentation of *any* evidence to support its allegations. There is also little doubt that the action was filed in bad faith based upon the testimony of its President that the sole purpose behind the filing of the lawsuit was to put its lawful competitor out of business. Plaintiff's actions and motives justifies the trial court's

having awarded attorney fees as a sanction for conduct which directly caused "the parties, attorneys, citizens and court employees to waste a considerable amount of time, money and effort." *Owens* at ¶ 16, 565 P.2d at 8. The trial court's order is supported both by the law and the weight of the evidence.[7]

## Defendant's Counter–Appeal

¶ 15 Mitchell and MGCS seek modification in the amount of attorney fees awarded, arguing that the trial court abused it discretion in granting attorney fees in a sum less than requested. Defendants argue that the court erred in allowing GSC to present the testimony of an attorney-witness absent requisite notice as required by Rule 4(e) of the Rules for the District Courts of Oklahoma, 12 O.S. 2002 Supp. ch. 2, app.

¶ 16 GSC responds, arguing that the trial court held correctly in determining that Rule (4)(e) was not self-executing and acted within its discretion by allowing the witness to present testimony about the number of hours required to defend the lawsuit. Plaintiff further contends that Defendants were provided an opportunity to interview the witness prior to examination, that each conducted a full examination and that neither Mitchell nor MGCS elected to sponsor their own expert or seek a continuance.

¶ 17 The trial court's ruling as to the reasonableness of an attorney fee award must be affirmed on review absent a finding the lower court abused its discretion. *State ex rel. Burk v. City of Oklahoma City,* 1979 OK 115, ¶ 22, 598 P.2d 659, 663.

¶ 18 Rule 4 establishes the procedure to be followed in submitting motions to the Oklahoma district courts for consideration. In the version of the Rule in effect in this case, subsection (e) contained discretionary language directing that filed motions "may be deemed confessed," absent the issuance of a response within fifteen (15) days of service. Prior to October 17, 2002, Rule 4(e) stated that unopposed motions "shall be deemed confessed."

¶ 19 The Oklahoma Court of Civil Appeals has addressed the previous version of Rule 4(e). *Brown v. Curtis,* 2003 OK CIV APP 47, 71 P.3d 34; *Westlake Presbyterian Church, Inc. v. Cornforth,* 1996 OK CIV APP 159, 940 P.2d 1208. In interpreting the strict language of the Rule then in effect, the Court of Civil Appeals stated that, notwithstanding the inclusion of the mandatory term, trial judges must certainly retain discretion to review all motions to ensure that the requested relief is substantiated by law and fact. *Brown* at ¶ 30, 71 P.3d at 40; *Cornforth* at ¶ 6, 940 P.2d at 1210.

¶ 20 No cases have been issued by the appellate courts interpreting Rule 4(e) as amended in 2002. However, the use of the permissive term "may" harmonizes the language of the Rule with holdings in *Brown* and *Cornforth,* both of which permitted the lower court to excuse a party's failure to comply with the Rule's requirements to ensure justice. Ample evidence exists in the record to support our conclusion that the trial court maintained the discretion to conduct a hearing, notwithstanding GSC's failure to respond to the original and supplemental fee applications in a timely manner.

¶ 21 When considering an application for attorney fees, the Oklahoma Supreme Court has given special guidance to the lower courts, stating that "recovery for counsel fee allowance must be set upon and supported by evidence presented in an adversary proceeding in which the facts and computation upon which the trial court rests its determination are set forth in the record with a high degree of specificity." *Payne v. DeWitt,* 1999 OK 93, ¶ 18, 995 P.2d 1088, 1096. (Footnotes omitted.) During the hearing, "(*l* )awyers are obligated to provide the trial court with the data necessary to document the work performed together with the method used to arrive at a counsel-fee allowance." *Id.*

¶ 22 In the case before us, the trial court conducted an attorney fee hearing in a manner consistent with that prescribed in *Payne.* Evidence was received from all par-

---

7. Having affirmed the fee award on other grounds, we find it unnecessary to address the applicability of 12 O.S.2004 Supp. § 2011.1 to this case.

ties in support of, and in opposition to, the details of the fee allowance sought by Mitchell and MGCS. Detailed billings and supporting affidavits from the Defendants were admitted with testimony of an attorney-expert offered to question elements of the billing practice. We find no error in the trial court's attorney fee award.

¶ 23 Finding the record contains the necessary findings to support the trial court's having relied upon its inherent equitable authority in awarding attorney fees, and finding the trial court did not abuse its discretion in entering an award, the order of the trial court is affirmed.[8] AFFIRMED

¶ 24 Defendants motion for appeal-related attorney fees is granted, and the cause remanded to the trial court for a determination of reasonable attorney fees and costs.

ADAMS, J., and MITCHELL, V.C.J., concur.

---

8. In its Reply Brief, MGCS asks us to affirm the trial court's award of attorney fees under The Uniform Trade Secrets Act, 78 O.S. §§ 85–94. Having held the award properly issued on other grounds, we decline to address the applicability of this provision to the facts before us.